UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| EDWARD HERSHEWE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:14-cv-00655-MHT-TFM |
| | ) | |
| KEITH GIVENS, | ) | |
| Individually and in his capacity | ) | |
| as member and manager of VLO, | ) | |
| | ) | |
| JOHN GIVENS, | ) | |
| Individually and in his capacity | ) | |
| as member of VLO, | ) | |
| | ) | |
| CHASE GIVENS, | ) | |
| Individually and in his capacity | ) | |
| as member of VLO, | ) | |
| | ) | |
| U.S. LEGAL FORMS, INC., | ) | |
| | ) | |
| EAGLE INVESTMENTS, LLP, | ) | |
| | ) | |
| EAGLE INVESTMENTS GROUP, LLP, | ) | |
| | ) | |
| USLEGAL, INC., | ) | |
| | ) | |
| VLO., and | ) | |
| | ) | |
| JACOBY & MEYERS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

COMES NOW Plaintiff Edward Hershewe ("Plaintiff") by and through his undersigned counsel, and for their Second Amended Complaint against Defendants Keith Givens, John Givens, Chase Givens, Eagle Investments, LLP, Eagle Investments Group, LLP, and U.S. Legal Forms, Inc., USLegal, Inc., VLO., and Jacoby & Meyers, LLC, hereby states as follows:

1

## PARTIES

1.      Plaintiff Edward Hershewe is an individual and a citizen of Missouri.

2.      Defendant Keith Givens ("Keith Givens") is an individual and a citizen of Alabama.  Keith Givens may be served with process at 430 W. Main Street, Dothan, Alabama 36305.

3.      Defendant John Givens ("J. Givens") is an individual and a citizen of Birmingham, Alabama.  John Givens may be served with process at 1929 3rd Avenue North, Suite 800, Birmingham, Alabama 35203.

4.      Defendant Chase Givens ("C. Givens") is an individual and a citizen of Dothan, Alabama.  Chase Givens may be served with process at 430 W. Main Street, Dothan, Alabama 36305.

5.      Defendant U.S. Legal Forms, Inc. ("US Forms") is a Mississippi corporation with a principal place of business at 3720 Flowood Drive, Flowood, Mississippi.  U.S. Legal Forms, Inc. may be served with process through its registered agent Frank Edens at 3720 Flowood Drive, Flowood, Mississippi 39232.

6.      Defendant US LEGAL, Inc. ("US Legal") is a Delaware Corporation with a principal place of business at 3720 Flowood Drive, Flowood, Mississippi.  US LEGAL, Inc. may be served with process through its registered agent Capitol Corporate Services, Inc., at 248 East Capitol Street, Suite 840, Jackson, Mississippi 39201.

7.      Defendant VLO Management, LLC is an Alabama limited liability company with a principal place of business at 430 W. Main Street, Dothan, Alabama 36305.  VLO Management, LLC ("VLO") may be served with process through its registered agent John Givens at 1929 3rd Avenue North, Suite 800, Birmingham, Alabama 35203.

2

8.      Defendant Eagle Investments, LLP (Eagle I) is/was an Alabama Limited Liability Partnership with its principal place of business at 163 W. Main Street, Dothan, Alabama 36301. Eagle I may be served with process through its registered agent Keith Givens at 163 W. Main Street, Dothan, Alabama 36301.

9.      Defendant Eagle Investments Group, LLP ("Eagle II") is an Alabama Limited Liability Partnership with its principal place of business at 430 W. Main Street, Dothan, Alabama 36301. Eagle II may be served with process through its registered agent Keith Givens at 430 W. Main Street, Dothan, Alabama 36301.

10.     Jacoby & Meyers, LLC ("J&M") is an Alabama limited liability company with its principal place of business at 430 West Main Street, Dothan, Alabama 36301.  Jacoby & Meyers, LLC may be served with process through its registered agent Keith Givens at 163 West Main Street, Dothan, Alabama 36301.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because claims presented by the Plaintiff arise under the laws of the United States.

12.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367, because the Fraud, Breach of Fiduciary duty, Piercing of the Corporate Veil, and Corporate Dissolution are so related to the claims over which this Court has original jurisdiction that the additional claims form part of the same case or controversy under Article III of the United States Constitution.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the claim occurred in this district and a substantial part of the property subject to this action is situated in this district.

**RELATIONSHIP OF THE PARTIES**

14.    At all relevant times herein, <u>Defendant Keith Givens</u>:

    a.   owned 20% of VLO.

    b.   was a legally-designated manager of VLO.

    c.   had access to, and custody and control of, the bank account and assets for VLO.

    d.   had a management interest in US Legal.

    e.   had partial ownership and management interest in Defendant Eagle I.

    f.   had partial ownership and management interest in Defendant Eagle II.

    g.   had partial ownership and management interest in Defendant J&M.

    h.   had partial ownership and management interest in U.S. Legal, PC.

    i.   was a lawyer for J&M.

    j.   was father to Defendant John Givens.

    k.   was father to Defendant Chase Givens.

    l.   was an attorney and managing partner at Cochran, Cherry, Givens, Smith, Sistrunk & Sams, P.C.

15.    At all relevant times herein, <u>Defendant John Givens</u>:

    a.   owned 15% of VLO.

    b.   had access to, and custody and control of, the bank account and assets for VLO.

    c.   was an attorney at Cochran, Cherry, Givens, Smith, Sistrunk & Sams, P.C.

    d.   had a management interest in US Legal.

    e.   had partial ownership and management interest in Defendant Eagle I.

  f. had partial ownership and management interest in Defendant Eagle II.

  g. had a partial ownership interest in Defendant J&M.

  h. had a partial ownership interest in U.S. Legal, PC.

  i. was the son of Keith Givens.

  j. was the brother of Chase Givens.

16. At all relevant times herein, <u>Defendant Chase Givens</u>:

  a. owned 15% of VLO.

  b. had access to, and custody and control of, the bank account and assets for VLO.

  c. is an attorney at Cochran, Cherry, Givens, Smith, Sistrunk & Sams, P.C.

  d. was the Merger & Acquisition Attorney at J&M.

  e. had a management interest in US Legal.

  f. had partial ownership and management interest in Defendant Eagle I.

  g. had partial ownership and management interest in Defendant Eagle II.

  h. Had partial ownership and management interest in U.S. Legal P.C.

  i. had a partial ownership interest in Defendant J&M.

  j. was the son of Keith Givens.

  k. was the brother of Chase Givens

17. Keith Givens, John Givens, and Chase Givens own 20%, 15%, and 15% of VLO , respectively, which equals a 50% interest in the LLC. The remaining shareholders are Plaintiff Hershewe (46.25%), Hezekiah Sistrunk (1.875%) and Shean Williams. (1.875%)

18. Attorneys Hezekiah Sistrunk and Shean Williams are partners and attorneys at Cochran, Cherry, Givens, Smith, Sistrunk & Sams, P.C.

19. Defendant Keith Givens and Plaintiff Hershewe are co-managers of VLO.

20.     All members of VLO, with the exception of Plaintiff, are partners and/or attorneys at Cochran, Cherry, Givens, Smith, Sistrunk & Sams, P.C.

21.     Upon information and belief, Eagle I ceased being a legally entity sometime in 2013-2014, and Eagle II was formed.

22.     Upon information and belief Eagle II is the successor in interest and liability of Eagle I with all the assets of Eagle I.

23.     Defendant U.S. Legal, Inc., which was formerly US Legal, LLC., owns 100% of US Forms.  Defendant Keith Givens is on the board of directors of US Legal, and Plaintiff Hershewe and Frank Edens are likewise Directors of U.S. Legal.

## FACTS COMMON TO ALL COUNTS

**A) Formation of VLO**

24.     Around 2010 and 2011, Plaintiff Hershewe and Defendant Keith Givens began discussing an idea for a legal business venture.

25.     The venture consisted of establishing both virtual and physical law offices from coast to coast, with the physical and virtual offices being operated under the J&M name.

26.     To facilitate the venture, Plaintiff, Keith Givens, John Givens, and Chase Givens formed the limited liability company VLO to manage law offices virtually and physically.

27.     Keith Givens determined VLO should be formed in Alabama, where he lived and practiced law.

28.     As an initial part of the venture, Plaintiff Hershewe started talks with Lexis-Nexis ("LN") for LN to provide forms technology through its E-ZLaw platform to Plaintiff and J&M.

6

29.     A separate company would be created and set up by Plaintiff, LN and J&M to manage the J&M law firms. VLO and LN would have joint ownership of the new company. The ultimate goal was to raise capital for the management company through an IPO.

30.     A proposed Memorandum of Understanding (the "MOU") was created to memorialize the understanding of Hershewe, LN and J&M, which was signed by Keith Givens, J&M and Hershewe.  LN decided not to move forward with the venture and dropped out of talks with Keith Givens, Plaintiff Hershewe and J&M.

31.     Plaintiff Hershewe and the Givens decided to move forward a similar venture by purchasing US Legal, Inc., a Mississippi corporation.   The exclusive license and intellectual property for the J&M name was to be granted to VLO as part of the joint venture.

32.     After LN declined the proposal, Hershewe contacted Frank Edens at US Legal to investigate whether the venture could acquire US Legal, Inc. and US Forms, which would provide legal forms for the venture.

33.     This purchase went through, and the assets of US Legal, Inc., the Mississippi Corporation were assigned to US Legal, LLC., a Delaware corporation owned by VLO, which later was reincorporated as defendant US Legal.

**B) Funding of VLO**

34.     Hershewe contributed capital to VLO in the amount $3,500,000 cash.

   a.  On March 16, 2012, Hershewe wire transferred $1.5 million. **Exhibit 10-10**.

   b.  On July 6, 2012, Hershewe wire transferred another $2 million. **Exhibit 10-6**.

   c.  $1.5 Million of the capital Plaintiff contributed to VLO was designated as a capital contribution to VLO, in that prior to transferring the funds, Plaintiff stated "I want to confirm that out of the $3.5 million I am in for, that $1.5

million will come back to me eventually." **Exhibit 7**, E-mail from Ed to Keith Givens.

35.     Keith Givens was to obtain, transfer, and provide all licensing, websites, logos, copyrights, trademarks, intellectual property held by J&M, and the Jacoby & Meyers brand name and good will to VLO, not to include the licenses of other J&M corporations outside of Kevin Given's control.

36.     Keith Givens represented to Plaintiff that he owned this property in his company called J&M and could obtain and transfer the property to VLO.

37.     Keith Givens also represented to Plaintiff he would contribute free rent to VLO for the first two years.

38.     It was agreed between Hershewe and Keith Givens that VLO would buy US Legal, Inc., and its subsidiary, US Forms, using part of Hershewe's contributed capital.

39.     Under the agreement, 80% of US Legal would be owned by VLO and the former owner Frank Edens would retain 20% ownership.  As part of the closing, Frank Edens was issued a 20% ownership of US Legal.

40.     The total purchase price for US Legal, Inc., was $3,000,000 to be paid at closing on July 6, 2012. This included the assignment of additional contracts and leases to be paid by US Legal to Frank Eden.

**C) Removal of VLO  Funds**

41.     Keith Givens, John Givens and Chase Givens were to use the funds Plaintiff placed in the VLO account to purchase US Legal, Inc. and US Forms, and for VLO's business operations.

8

42.     The day Plaintiff wired the $1.5 million from Missouri to Alabama on March 16, 2012, Keith Givens transferred $1 million of those funds to account 100088686 at MidSouth Bank, owned by Eagle I. **See Exhibit 15, 16, 17, 18.**

43.     Keith Givens and Chase Givens both had their names on the account 100088686 at MidSouth Bank. **Exhibit 17, 46**.

44.     Keith Givens and Eagle I then transferred by telephone $933,654.85 of the VLO funds. **Exhibit 46**.

45.     The $933,654.85 was a "loan payment from DDA per Keith Givens". **See Exhibit 46**.

46.     The $933,654.85 loan payment was not related to VLO's business or operations, or Plaintiff's business.

47.     At all times relevant herein, neither VLO nor Plaintiff has ever been the beneficial owner of Eagle I/Eagle II, or any property or assets that the $933,654.85 purchased or applied to.

48.     No part of the $1 million Keith Givens transferred into account #100088686 at MidSouth Bank was ever returned to VLO or Plaintiff.

49.     Givens Defendants then proceeded to spend the remaining $500,000 in VLO's bank account.

    a.  Givens Defendants spent over 99% of the remaining $500,000 from VLO's bank account on goods and services wholly unrelated to the operation or business of VLO.  **See Exhibit 113.**

    b.  The Givens Defendants spent over $150,000 on furnishings unrelated to VLO.

    c.  Defendant Keith Givens spent $13,087.00 on registration fees for Jacoby & Meyers Bankruptcy, a J&M entity owned by Defendant Keith Givens.

9

    d.  Defendant Keith Givens then spent $24,637.50 on legal fees for his company Defendant Jacoby & Meyers Bankruptcy.

50.     The QuickBooks records produced in discovery contain metadata that show an audit trail detailing the changes within the financial records of VLO. **Exhibit 47.**

51.     Among the backdated changes revealed by this audit trail are several changes regarding the various attempts to explain the missing $1,000,000, as well as obscuring and deleting information about the use of the $500,000. **Exhibit 109.**

52.     These changes were made by an unidentified "admin" user, and do not identify who in particular made these changes.

53.     Keith Givens never obtained, transferred, or provided to VLO all licensing, websites, logos, copyrights, trademarks, intellectual property, and the Jacoby & Meyers brand name and good will under J&M.

54.     J&M into other operating agreements contrary to the exclusive license contemplated under the joint venture with VLO.

55.     Keith Givens, John Givens, and Chase Givens retained a total of 50% ownership interest in VLO, and through that ownership made use of the U.S. Legal name for U.S. Legal PC, without having ever contributed any capital to VLO.

56.     Keith Givens never informed Plaintiff he was transferring money from the VLO account to pay off a loan that had no relationship to VLO or its business, or using VLO funds to purchase personal property and services for Keith Givens, John Givens, and Chase Givens and their companies.

**D) Additional Funding to USForms**

57.     In June of 2012, Plaintiff was told that Frank Edens had depleted the operating account of US Legal as part of the sale, and additional funds were needed to cash flow the business.

58.     At the time Keith Givens made this representation to Plaintiff, Keith Givens did not inform Plaintiff he had spent nearly all $1.5 million of Plaintiff's contribution to VLO on his and his family's personal businesses.

59.     Defendant Keith Givens requested that Plaintiff sign onto a $1 million bank loan at BBVA Compass Bank in Dothan to benefit VLO, and Plaintiff agreed.

60.     At no time did Keith Givens explain to Plaintiff that the bank loan was for the purchase of U.S. Legal, Inc., although in the documents that Keith Givens prepared in Alabama for the loan, this was the stated purpose of the loan.

61.     Plaintiff and Defendant Keith Givens were both required to personally guarantee this loan. Defendant Keith Givens was required, as a special condition of the bank, to have a third party CPA of the banks choosing certify his financial and tax status.

62.     The loan came due one year later, and neither US Legal nor VLO could pay the loan, so VLO, Plaintiff, and Keith Givens renewed the loan through ServisFirst Bank in Dothan, Alabama.

63.     After the loan had to be refinanced because neither VLO nor US Legal could pay it, Defendant Keith Givens attempted to unilaterally have himself released from his personal guarantee of the loan, and leave Plaintiff with the remaining liability, by sending a check for approximately $500,000.

11

64.     The money from this loan was used with the $2 million wired transferred by Plaintiff to purchase U.S. Legal, Inc.

65.     To date, Keith Givens, Chase Givens, and John Givens have never attempted to repay the VLO funds they transferred and used on personal items and on their family businesses.

66.     To date, Keith Givens, Chase, Givens, and John Givens have never attempted to transfer the promised assets to VLO that were intended to be the consideration for their ownership interest in VLO.

67.     In March 2014, LegalZoom.com, Inc. led a group of creditors in filing a Chapter 7 involuntary bankruptcy proceeding against Jacoby & Meyers Bankruptcy in the United States Bankruptcy Court for the Southern District of New York.  This case is currently pending in the United States Bankruptcy Court for the Southern District of New York, case number 14-10641-scc.

68.     As such, the Hershewe funds spent by Defendant Keith Givens on his own Jacoby & Meyers Bankruptcy company is currently unredeemable because that company is undergoing bankruptcy.  Hershewe Law Firm is named as a creditor in the bankruptcy case.


## COUNT I - FRAUD
**(Against Defendant Keith Givens, John Givens, Chase Givens, and Eagle I/EagleII)**

69.     Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

70.     In or about February of 2012, Attorney Keith Givens represented to Plaintiff that Plaintiff's $3,500,000 cash contribution in VLO would be used for VLO's business operations and growth.

12

71.     Plaintiff confirmed this understanding to Attorney Keith Givens in an e-mail dated February 16, 2012 and February 17, 2012. **Exhibit 6, 7.**

72.     Defendant Keith Givens represented he was negotiating this VLO venture on behalf of himself, and on behalf of his sons, Defendant John Givens and Defendant Chase Givens, and that he was going to divide his 50% interest in VLO with his sons. Each son received 150 shares of VLO under the Bylaws.

73.     Defendant Keith Givens, at all times herein mentioned, was acting as an actual or apparent agent for Defendant John Givens, Defendant Chase Givens, and Eagle I/Eagle II. Those actions and representations of Keith Givens can be imputed to them.

74.     Keith Givens, John Givens, and Chase Givens each were one-third owners and managers of Eagle I at the time they transferred $1.0 million of Plaintiff's cash contribution to VLO to Eagle.

75.     At all times herein mentioned, Defendant John Givens, Chase Givens, and Keith Givens had actual or constructive knowledge of how the VLO funds were being transferred and used.

76.     Also in or around February of 2012, Keith Givens also represented to Plaintiff that he would obtain, transfer, and provide all licensing, websites, logos, copyrights, trademarks, intellectual property, and the Jacoby & Meyers brand name and good will owned by J&M to VLO. **Exhibit 6, 7.**

77.     Plaintiff reasonably relied on Attorney Keith Givens' assertion that Keith Givens would use the funds for VLO's business operations and growth.

13

78.     Plaintiff reasonably relied on Keith Givens' assertions that he would use the VLO funds for VLO's business growth and operations because Keith Givens was, himself, promising to contribute valuable assets to the VLO business. **Exhibit 6, 7.**

79.     Relying on Keith Givens assertions, Plaintiff wired an initial amount of $1.5 million to VLO's bank account on March 16, 2012.

80.     K. Givens never told Plaintiff that Keith Givens intended to immediately transfer $1,000,000 of the VLO funds to an account owned by Eagle I, or refuse/fail to contribute the intellectual property of J&M to VLO.

81.     Keith Givens took $1 million of those funds and transferred it to account 100088686 at MidSouth Bank, owned by Eagle I. **See Exhibit 15, 16, 17, 18, 46 and 48.**

82.     Based on the timing of Keith Givens' representations and his transfer of the VLO funds the same day the wire transfer was confirmed, at the time Attorney Keith Givens made his representations to Plaintiff, he possessed an intent to deceive Plaintiff into wiring the funds so Keith Givens would have access to them.

83.     The VLO bank account statements were mailed directly to Chase and Keith Givens at 430 Main Street in Dothan, Alabama. The bank statements were not forwarded to Plaintiff.

84.     Keith Givens, individually or through his employees or agents, continued to misrepresent the nature of the transfer of VLO funds to the Eagle I bank account by tampering, altering, and modifying the VLO QuickBooks accounts from at least December of 2012 to September of 2014.

85.     Keith Givens, on behalf of VLO filed a false federal and state tax return for the year 2012, claiming that the $1 million transferred to the Eagle I account was a loan to Eagle I.

14

86.     By claiming that the $1 million was a loan, Keith Givens, Chase Givens, John Givens, and Eagle I avoided paying any taxes on the $1 million they received from VLO funds.

87.     The 2012 federal tax return for VLO was not given to the Plaintiff by Defendants until October 18, 2013, despite Plaintiff requesting such documents. **Exhibit 97**.

88.     After Plaintiff discovered this information, Plaintiff requested from Defendants the financial records, any loan agreement, board resolution, or supporting documents for the $1 million labeled as "due from Eagle Investments." **Exhibit 20.**

89.     Keith Givens, individually or through his employees or agents, reclassified the $1,000,000 transfer as payment for leasehold improvements and a two-year lease that appeared to benefit VLO.

90.     Keith Givens filed another false federal and state tax return on behalf of VLO for the tax year 2013, this time representing that the $1 million was a "Prepaid Lease Expense," of which $240,000 was claimed as an asset of VLO for End of Year.

91.     The purpose of the reclassification as "leasehold improvements" and "prepaid rent" was again to avoid Keith Givens, John Givens, Chase Givens, or Eagle I/Eagle II having to repay the $1 million "due from Eagle Investments" back to VLO.

92.     Plaintiff then requested receipts, lease agreements, board resolutions, or any supporting documents regarding the reclassification of the $1 million as "leasehold improvements" and "prepaid lease expense."

93.     Keith Givens, John Givens, and Chase Givens and their tax preparer Bret Browning have failed to provide any support for the reclassification or demonstrate any benefit derived by VLO from these alleged expenses. **Exhibit 56**.

15

94.    Even after formal discovery requests from Plaintiff, Keith Givens, John Givens, and Chase Givens have still failed to provide any support for this reclassification or demonstrate any benefit derived by VLO.

95.    In reality, the transferred VLO funds had benefitted Keith Givens, John Givens, Chase Givens, Eagle I/EagleII and its owners, and VLO had no lease agreement and no offices on which leasehold improvements could have been made.

96.    Plaintiff was harmed in that the funds that Attorney Keith Givens represented would be used for VLO purposes were used for Eagle I/Eagle II and Defendant Givens' personal benefit, so Plaintiff had to personally guarantee a $1,000,000 loan to VLO in order to fully fund US Legal and US Forms.

97.    Plaintiff was harmed in that his ownership interest in VLO had less value because of the $1 million debt, the absence of $1.5 million that could have been used to grow and further VLO's business, and the absence of the licensing, websites, logos, copyrights, trademarks, intellectual property, and the Jacoby & Meyers brand name and good will to VLO.

98.    If Keith Givens had disclosed that he intended to transfer $1,000,000 to Eagle I/Eagle II, and to use the remaining $500,000 in VLO funds to purchase personal items and pay for J&M, LLC expenses, Plaintiff would not have transferred the funds.

99.    If Attorney Keith Givens, individually or through his employees or agents, had not transferred the $1,000,000 to Eagle I/Eagle II and squandered the remaining $500,000, Plaintiff would not have had to sign a personal guarantee on the $1,000,000 loan to VLO. As such, Plaintiff has been directly harmed by Defendant Keith Givens' conduct.

100.    If Keith Givens, individually or through his employees or agents, had not transferred the $1,000,000 to Eagle I/Eagle II and squandered the remaining $500,000, Plaintiff

would not have had to make additional shareholder contributions to finance the payroll of US Legal and US Forms. **Exhibit 32.**

101.   If Keith Givens had not misrepresented to Plaintiff an intention to transfer **all** the licensing, websites, logos, copyrights, trademarks, intellectual property, and the Jacoby & Meyers brand name and good will to VLO, Plaintiff would not have transferred the funds or agreed to share ownership of VLO with Keith Givens, Chase Givens, or John Givens.

**WHEREFORE**, Plaintiff prays for this Court to enter judgment against Defendants Keith Givens, John Givens, Chase Givens, and Eagle I/Eagle II in the amount of $1,500,000.00 million and interest, plus interest already accrued on the $1,000,000 loan, all shares of VLO and US Legal and US Forms currently owned by Defendant Keith Givens, John Givens, and Chase Givens, along with punitive damages, and for such further relief as the Court deems just and proper under the circumstances.

## COUNT II:
### BREACH OF FIDUCIARY DUTY OWED TO PLAINTIFF, INDIVIDUALLY AND TO VLO, AS A DERIVATIVE CLAIM ON BEHALF OF VLO
#### (Defendant Keith Givens and Chase Givens)

102.   Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

103.   At all relevant times, VLO was a member-managed LLC.

104.   Plaintiff brings these claims Individually, and as derivative claims on behalf of VLO.

105.   Any attempt by Plaintiff to secure a majority of VLO members in order to bring the suit on behalf of VLO would be futile in that together, Defendants Keith, Chase, and John Givens are 50% owners of VLO, and are the parties who are charged with breaching the duties

they owed to VLO and benefitting personally and through other entities they own, to the detriment of VLO and Plaintiff.

106.   Defendant Keith Givens delegated management duties of VLO to John Givens and Chase Givens.

107.   Defendants Keith, John, and Chase Givens each owed a duty of loyalty and a duty of care to Defendant VLO and to Plaintiff, as a member of VLO:

a. Defendants Keith, John, and Chase Givens had a duty to account to the limited liability company and to hold as trustee for it any property, profit, or benefit derived by the member in the conduct of the limited liability company's business or derived from a use by the member of the limited liability company's property. ALA Code § 10-12-21(f)(1)

b. Defendants Keith, John, and Chase Givens had a duty to refrain from dealing with the limited liability company as, or on behalf of, a party having an interest adverse to the limited liability company. ALA Code § 10-12-21(f)(2)

c. Defendants Keith, John, and Chase Givens had a duty to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law. ALA Code § 10-12-21(g)

d. Defendants Keith, John, and Chase Givens had a duty to discharge their duties with the obligation of good faith and fair dealing.

108.   Defendants Keith, Chase, and John Givens are operating and have operated VLO at all times since March of 2012, and have effectively excluded Plaintiff from any and all knowledge of the material financial decisions that Keith Givens was making regarding the $1,500,000 on behalf of VLO and to the detriment of VLO.

18

109.   Givens Defendants had refused to provide to Plaintiff a complete, accurate, and full accounting of the books and supporting records of VLO.

110.   Givens Defendants did not consult with Plaintiff and misrepresented facts to Plaintiff regarding the management of the $1,500,000 of VLO.

111.   Defendant Keith Givens committed wire fraud by inducing Plaintiff Hershewe to wire the $1,500,000 that Givens intended to immediately divert to his own purposes.

112.   Defendant Keith Givens facilitated the filing of false tax returns on behalf of VLO, potentially exposing VLO to penalties and criminal sanctions through this criminal act.

113.   Defendants Keith Givens and Chase Givens are liable derivatively to VLO for their mismanagement of the corporation and breach of fiduciary duties owed to VLO and its members, all of which have caused substantial loss.

114.   Defendants Keith, John, and Chase Givens breached their duty of care and duty of loyalty when they, individually or through their employees or agents, transferred the $1,000,000 to Eagle I and used the bulk of the funds to pay a loan unrelated to VLO or its business operations.

115.   Defendants Keith, John, and Chase Givens breached their duty of care and duty of loyalty when they spent VLO funds on J&M corporations, on Eagle I, on their own personal property, on improvements to their own properties, and on furniture at 111 E Main in Dothan Alabama. **Exhibit 113.**

116.   Defendants Keith, John, and Chase Givens failed to account to Plaintiff or to VLO for the VLO funds they appropriated and from which they derived personal benefit.

117.     Defendants Keith, John, and Chase Givens attempted to use their management authority in VLO to adopt a licensing agreement that was contrary to that contemplated under the Joint Venture between VLO and J&M and that was contrary to the interests of VLO.

118.     Defendants Keith, John, and Chase Givens breached their duty of care and duty of loyalty to Plaintiff and to VLO when they committed illegal acts, including promissory fraud, wire fraud, filing false tax returns on behalf of VLO for 2012 and 2013, tampering with evidence, RICO violations and/or securities fraud, and embezzlement.

119.     As a result of Defendants' breaches of fiduciary duty, Plaintiff Hershewe has suffered damages, including a loss of his $1,500,000.00 shareholder contribution to VLO which was never used for the benefit or growth of VLO.

120.     Givens Defendants did not lose their contributions to VLO in that they never transferred the promised intellectual property assets from J&M into VLO's name; they retained the property they promised as their equity contribution to form VLO.

121.     The aforementioned acts of Defendants Eagle, the Jacoby & Meyers Corporations, and The Givens Defendants were intentionally oppressive, fraudulent, and malicious towards Plaintiff, and as such, Plaintiff is entitled to recover punitive damages against those Defendants.

122.     The conduct of the Defendants Keith, John, and Chase Givens has constituted a breach of the fiduciary duty that each Defendant owes to Plaintiff Hershewe and to VLO, and Plaintiff Hershewe therefore asks the Court to:

      a. Take jurisdiction of the Defendant corporations in which Plaintiff is a shareholder with Keith, John, and Chase Givens, namely US Forms, US Legal, and VLO Management;

20

    b.  Terminate the position of management and directorship for each of the Givens

        Defendants on any and each of the VLO, US Legal, and US Forms corporations.

    c.  Order the Givens Defendants reimburse the misappropriated $1,500,000

        investment in Defendant VLO;

    d.  Return all of the shares of stock held by the Givens Defendants in VLO and US

        Legal;

    e.  Reimburse VLO and Plaintiff for the unnecessary interests and costs incurred

        from Defendants' mishandling and misappropriation of VLO capital and monies.

### COUNT III – PIERCING THE CORPORATE VEIL
**(Against Defendant Keith Givens, John Givens, Chase Givens,
J&M, Eagle I, and Eagle II)**

123.    Plaintiff incorporates all other paragraphs as though fully set out herein.

124.    Defendants Keith Givens, John Givens, and Chase Givens have used their position as members and managers of J&M, LLC to evade personal responsibility and to evade responsibility for fraud and the breach of their fiduciary duties to Plaintiff and to VLO Management.

125.    Eagle II is the successor in interest to the liability of Eagle I.

126.    Defendants Keith Givens, John Givens, and Chase Givens have used their position as members and managers of Eagle I and its successor, Eagle II, as a means to evade personal responsibility for fraud and the breach of their fiduciary duties to Plaintiff and to VLO Management, as set forth above.

127.    After Defendants Keith Givens, John Givens, and Chase Givens transferred and spent VLO funds to benefit Eagle I/Eagle II and J&M Bankruptcy Law, as set forth above,

Defendants Keith Givens, John Givens, and Chase Givens undercapitalized Eagle I/Eagle II and J&M Bankruptcy Law, and J&M, LLC.

128.    J&M Bankruptcy Law, LLC's undercapitalization is apparent in the fact that it has been placed into bankruptcy.

129.    Eagle I/Eagle II's undercapitalization is apparent from Defendant Eagle I and Eagle II's Motion to Dismiss filed in this case, which states that there is no money in those companies. Additionally, when Keith Givens transferred the $1,000,000 on March 16, 2012, to Eagle I, $933,654.85 of those funds were then paid on a loan with MidSouth Bank that same day. Therefore, none of the $1,000,000 transferred on March 16, 2012 was kept in Eagle I/II. The bank statement from the Eagle I/Eagle II bank account stated Eagle I had $250,038 in its account in March 2012. **Exhibit 46**.

130.    The undercapitalization of Eagle I/II by the Givens Defendants was intentional so that the Givens Defendants did not have to repay funds they misappropriated from VLO or Plaintiff.

131.    Plaintiff and VLO are involuntary creditors of Defendants John, Chase, and Keith Givens, J&M, and Eagle I/Eagle II, in that VLO funds were diverted from the legitimate business operations and growth of VLO and used for the benefit of Defendants John, Chase, and Keith Givens, J&M, and Eagle I/Eagle II without Plaintiff's knowledge and without the knowledge of other VLO members, Shean and Hezekiah.

132.    Defendants Keith, Chase, and John Givens are operating and have operated VLO at all times since March of 2012, and have effectively excluded Plaintiff from any and all material financial decisions involving the $1,500,000 of VLO.

133.    Defendant Keith, Chase, and John Givens have refused to provide a reasonable accounting of the books and records of VLO to Plaintiff.

134.    Defendant Keith Givens has refused to consult with Plaintiff on the management of the $1,500,000 VLO or give Plaintiff access to any VLO property, assets, accounts, or anything that would allow Plaintiff to undertake any duties as a co-manager of VLO or give him reason to think the funds he was investing in VLO were being mis-used.

135.    Eagle I/Eagle II are corporate devices where the purpose was to act as a vehicle for Defendants John Givens, Keith Givens, and Chase Givens to avoid personal liability for funds they misappropriate.

136.    Defendants John Givens, Keith Givens, and Chase Givens have drained assets from Eagle I/Eagle II, and J&M Bankruptcy Law in an attempt to protect themselves from liability for and recovery from the transfer and misuse of Plaintiff's cash contribution out of VLO.

137.    Defendant J&M is the parent corporation of J&M Bankruptcy Law, and both are owned and managed by Defendants Keith Givens, John Givens, and Chase Givens.

138.    Thus, J&M Bankruptcy Law is merely an alter ego, an adjunct, an instrumentality, of J&M such that J&M should be held liable for the VLO funds Defendants Keith Givens, John Givens, and Chase Givens misappropriated for payment of J&M Bankruptcy Law registration fees and legal fees.

139.    J&M, through its manager and agents, Keith Givens, John Givens, and Chase Givens, had complete control and domination of J&M Bankruptcy Law's finances, policy, and business practices, such that J&M Bankruptcy Law had no separate mind, will or existence of its own.

140.    J&M, through its manager and agents, Keith Givens, John Givens, and Chase Givens, misused its control of J&M Bankruptcy Law, undercapitalized the company, which caused it to be forced into bankruptcy by creditors, and used misappropriated funds to further the interests of J&M and J&M Bankruptcy Law.

141.    The Joint Venture between VLO and J&M and those representations within it induced Plaintiff to invest the $3,500,000 into VLO.

142.    As a direct and proximate result of J&M, and Defendant Keith Givens, John Givens, and Chase Givens' aforementioned misuse of control of J&M Bankruptcy Law, and J&M, Plaintiff and, derivatively, VLO have suffered damage, in that VLO assets are locked into the bankruptcy action, and Plaintiff are involuntary unsecured creditors in that bankruptcy action.

143.    J&M Bankruptcy law has substantially no business except with J&M and no assets except those conveyed to it by the Defendants or by Defendant J&M.

144.    Plaintiff should be able to recover the misappropriated and misused funds from Defendants Givens' and J&M notwithstanding the attempt to set the corporate form as a shield from liability for their misconduct while retaining the ill-gotten gains.

WHEREFORE, Plaintiff prays this Court enter judgment piercing the corporate veil of Eagle I/Eagle II, and J&M, such that Defendants Keith Givens, John Givens, and Chase Givens can be held personally liable for the fraudulent gain obtained by those companies through the actions of Defendants Keith Givens, John Givens, and Chase Givens, and for such other relief as the Court should deem just and appropriate under the circumstances.

## COUNT IV – CORPORATE DISSOLUTION
### (Against Defendant VLO  and Subsidiaries)

145.    Plaintiff incorporates all prior paragraphs as though fully set out herein.

24

146.    Alabama Code § 10A-5-7.02 allows a member of a limited liability company to petition the court for dissolution of the company whenever it is not reasonably practicable to carry on the business in conformity with the governing documents.  The repeal of this subsection is not effective until January 1, 2017, and does not apply.

147.    Supplemental jurisdiction is proper, because the claims set forth in this complaint, as well as the conduct underlying those claims, make it such that it is no longer reasonable to carry on the business in conformity with the governing documents. As primarily the same facts and documents will need to be litigated, it is appropriate that this Court exercise its supplemental jurisdiction.

148.    The bylaws of VLO set forth the allocation of shares and requirements and duties of the officers. See **Exhibit 8**.

149.    The operation of VLO was intended to set up and manage a virtual law office network, contemplating the Joint Venture between J&M and VLO that was enacted.

150.    J&M has since entered into licensing and operation agreements contrary to the Joint Venture agreement and the license contemplated therein.

151.    Alabama Code section 10-12-21 (c) states that "An act of a manager or a member which is not apparently for the carrying on in the usual way the business of the limited liability company does not bind the limited liability company unless authorized in accordance with the operating agreement at the time of the transaction or at any other time."

152.    The purchases Keith Givens made inconsistent with the VLO bylaws with VLO funds are not binding on VLO despite the fact that Defendant Keith Givens was a manager and member of VLO at the time he transferred funds from VLO to Eagle I and made personal

purchases. The transfers and purchases were "not apparently for the carrying on in the usual way the business of the limited liability company."

153.    Substantial portions of the original shareholder contribution, namely $1,500,000, has been mishandled and misappropriated by Keith Givens.

154.    As shown in Count II regarding the breach of fiduciary duties by Defendants Keith Givens, John Givens, and Chase Givens, Plaintiff brings this action under Alabama Code § 10-12-21(c).

155.    Defendants Keith Givens, John Givens, and Chase Givens, individually, or through their employees or agents, have not acted in accordance with the bylaws, and are not acting in the interests of VLO, or pursuant to the fiduciary duties they owe to VLO.

156.    Due to Defendants Keith Givens, John Givens, and Chase Givens misappropriating $1,500,000 of VLO's funds that Plaintiff's paid for their own personal benefit and the benefit of Defendant Eagle I and II, The Cochran Firm, and Defendant J&M, Defendants Keith Givens, John Givens, and Chase Givens and their companies have acted in a way that is illegal, oppressive, and fraudulent.

157.    VLO cannot continue to operate as was outlined in the memorandum of understanding or pursuant to the bylaws based on the conduct outlined above.

158.    As such, Plaintiff Hershewe asks the Court to:

    a.    Take jurisdiction of the Defendant corporations in which Plaintiff is a shareholder with Keith, John, and Chase Givens, namely US Forms, US Legal, and VLO;

    b.    Appoint a trustee, administrator, or receiver to  the affairs of VLO;

WHEREFORE, Plaintiff respectfully requests the Court grant its request to dissolve VLO under Alabama Code section 10A-5-7.02, to aware the relief requested herein, and for such other relief as the Court should deem just and proper under the circumstances.

## COUNT V – CIVIL VIOLATION OF 18 U.S.C.A. §§ 1961, et seq.

159.    Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

160.    Plaintiff and Defendants were engaged in interstate and foreign commerce, and conducted business actions across interstate lines in various states.

161.    In violation of 18 U.S.C. § 1964(c) and (d), the Givens Defendants were employed by or associated with an enterprise, specifically their attempt to defraud Plaintiff of funds that Plaintiff paid to purchase his interest in VLO.  The racketeering enterprise, within the meaning of 18 U.S.C. § 1961, was an association in fact of Keith Givens, John Givens, and Chase Givens and other individuals, based on each defendant's particular function within the enterprise, to embezzle and otherwise steal corporate funds.

162.     The various associates functioned as a unit. The enterprise was an entity separate and apart from the pattern of activity in which it engaged.  The common purpose of the enterprise was (1) to artificially and illegally depreciate the value of VLO corporate assets, and (2) to utilize various bank accounts and other Defendant entities to systematically defraud the Plaintiff of the value of his interest in VLO.

163.    In violation of 18 U.S.C. § 1962(c), Keith Givens, John, Givens and other individuals employed deceptive means and racketeering practices to take over control of US Legal, and deprived VLO and Plaintiff of the rights in ownership of a legal business operation involved in interstate commerce.

27

164.    Defendant Keith Givens, John Givens, and Chase Givens cooperated together to induce Plaintiff into wiring $3,500,000 to the VLO account at the same bank where Eagle I had an account.

165.    Defendant J&M entered into a joint venture with VLO as a necessary part of the scheme to induce Plaintiff into wiring $3,500,000 to VLO.

166.    Plaintiff's $1,500,000, for which VLO was to reimburse Plaintiff, was then misappropriated by Keith Givens, John Givens, Chase Givens, Eagle I, and J&M.

167.    $1,000,000 of the Plaintiff's $1,500,000 was immediately transferred to an account held by Eagle I within the bank where Keith Givens had set up the account for VLO.

168.    Almost $500,000 of the Plaintiff's $1,500,000 was spent to the benefit of Keith Givens, John Givens, Chase Givens, Eagle I, and J&M.

169.    Defendant Keith Givens continued to deceive Plaintiff as to the status of his investment, and induced Plaintiff into personal guaranteeing a loan for an additional $1,000,000 necessary to purchase all stock of U.S. Legal, Inc. for VLO.

170.    Defendant Keith Givens and other individuals has continued to operate U.S Legal P.C. within Alabama, despite depriving VLO and Plaintiff of the benefit of participation and control over the operations contemplated by the Joint Venture between J&M and VLO.

171.    Throughout this period of deception, Defendants continued to misappropriate, spend, and improperly benefit from the $500,000 over the course of several months.

172.    Defendants had further refused to pay on the promissory note of VLO owed to the bank that they deceived Plaintiff into signing and personally guaranteeing, until Plaintiff filed suit; Defendant Keith Givens then attempted to have himself released from the personal guarantee for a $500,000 payment.

173.    Defendants have refused to reimburse VLO the misappropriated $1,500,000.

174.    All of the predicate acts of racketeering activity were part of the nexus of the affairs and functions of the racketeering enterprise.

175.    The Defendants were enabled to commit the predicate offenses by virtue of their position in the enterprise, or involvement in or control over the affairs of the enterprise.

176.    All of the predicate acts of racketeering activity began in 2011, and is currently ongoing and open ended, and threatens to continue indefinitely unless this Court enjoins the racketeering activity.

177.    The enterprise was in direct violation of 18 U.S.C. § 1343 in that the Defendants, knowing that the Plaintiff's funds were not going to be used for the corporate purposes of VLO, sent electronic transmissions across interstate lines to Plaintiff to fraudulently induce Plaintiff to wire $3.5 million in exchange for an equity interest in VLO.

178.    Already having decided to transfer the funds, Defendants induced Plaintiff to wire transfer the funds into the account Defendant Keith Givens had set up for VLO.

179.    The enterprise directly affected interstate commerce, as the Plaintiff was and is a resident of Missouri, and the Givens Defendants fraudulently induced Plaintiff to wire money across interstate lines to Alabama, as set forth above.

180.    The Plaintiff has been and continues to be severely and irreparably injured in his property as a direct and proximate result of the pattern of racketeering activity.

181.    Plaintiff has incurred liability and interest for a loan he was induced to enter to cover the purchase U.S. Legal Inc., for which the $1,000,000 transferred to Eagle I was intended and would have rendered the $1,000,000 loan unnecessary.

29

182.   Plaintiff has been required to continue to finance the operations VLO and US Legal to protect his investment, for which the misappropriated $500,000 was intended and would have rendered the additional $425,000 contribution unnecessary.

183.   Upon information and belief, when the Givens Defendants submitted the 2012 tax return for VLO to the I.R.S., which return was signed by one or more of the Givens Defendants, that return showed the misappropriated $1.0 million as a "loan" to Eagle Investments.  By filing a false 2012 Federal tax return declaring the $1.0 million was a loan to Eagle rather than income, the Givens Defendants and Eagle I avoiding paying U.S. taxes on the revenue or income of $1.0 million. Despite repeated inquiries, the Givens Defendants have failed to produce any loan agreements between VLO and Eagle I.  **See Exhibit 20.**

184.   After being confronted about the loan agreement between VLO and Eagle I and the repayment of the loan to VLO, the Defendants fraudulently created new documents that were submitted to the IRS on VLO's 2013 tax return, which showed the $1.0 million being treated as "pre-paid lease" and "leasehold improvements".

185.   The Givens Defendants have failed to provide in discovery requests from Plaintiff any lease agreements between VLO and Eagle I or Eagle II or an itemization of the alleged capital improvements.  **See Exhibit 20.**

186.   In violation of 18 U.S.C. § 1962(d), the Givens Defendants also conspired to violate 18 U.S.C § 1961, *et seq*.  The Givens Defendants conspired and agreed to commit the underlying predicate acts of mail fraud and wire fraud. The Givens Defendants conspired and agreed to commit these acts in furtherance of their conspiracy and enterprise.  Specifically, the Givens Defendants entered into an agreement to conduct or participate in the affairs of the enterprise through a pattern of racketeering activity as proscribed by subsection 1962(c) with

30

the specific intent to defraud the Plaintiff.  In furtherance of this enterprise, the Defendants agreed to assist the enterprise's involvement in corrupt endeavors with the intent to violate the provisions of 18 U.S.C. § 1961, *et seq*.

187.    These misleading tax documents exposed Plaintiff to additional liability, expense, and potential criminal sanction, as well as the added burden of correcting the fraud to prevent further loss of what remained of Plaintiff's investment.

188.    The Plaintiff has been injured as a result of the Defendants' violation and conspiracy to violate 18 U.S.C. § 1961, *et seq*. As such, Plaintiff Hershewe asks the Court under its authority in 18 U.S.C. § 1964 to:

    a.   Remove Defendants Keith, John, and Chase Givens from check writing authority for VLO, US Legal, and US Forms and replace them with Bill Carn;

    b.   Award threefold the damages inclusive of the $1,500,000 misappropriated funds, interest on the $1,000,000 loan, additional shareholder contributions, cash calls, costs in bringing this litigation and reasonable attorney fee;

    c.   Enjoin Defendants from the use of the US Legal intellectual property;

    d.   Prohibit Defendants Keith, John, and Chase Givens from acting or serving as officers or on the Board of Directors of VLO, US Legal or US Forms.

    e.   Divest Keith, John, and Chase Givens of their cumulative 50% interest in VLO;

    f.   Reasonably restrict the ability of the Givens Defendants to engage in such conduct in the future;

31

**COUNT VI – VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10B-5 PROMULGATED THEREUNDER AGAINST VLO AND THE INDIVIDUAL DEFENDANTS**

189.     Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

190.     This Count is asserted in the alternative to the § 1961 violation alleged above, pursuant to the exception to § 1961 jurisdiction described under § 1964(c).

191.     Keith Givens, John Givens, Chase Givens, Eagle I/Eagle II, and J&M violated of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated there under.

192.     Defendant Keith Givens disseminated or approved the materially false and misleading statements specified above, which he knew or deliberately disregarded that they were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

193.     The Givens Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of VLO as specified herein.

194.     The Givens Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Plaintiff's purchase of an equity interest in VLO in an effort to induce Plaintiff to pay an artificially high price for his equity interest in VLO in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are

32

sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

195.    Keith Givens set up the VLO account with MidSouth Bank where the account for Eagle I was already established.

196.    Over the phone on February 17, Keith Givens explained to Plaintiff that the $1,500,000 initial wire transfer would be a loan to VLO for purchase and operation of US Legal. **See Exhibit 7.**

197.    When Plaintiff wired the money into the VLO account, Keith Givens immediately transferred $1,000,000 into the account of Eagle I, the company equally owned by Keith Givens, Chase Givens, and John Givens.

198.    Each of the individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the individual Defendants were owners and/or directors at VLO during the time period when the material misstatements were made to the Plaintiff and members of VLO's management team or had control thereof; (ii) each of the individual Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of VLO was privy to and participated in the creation, development and reporting of the VLO's plans, and/or projections; (iii) each of the individual Defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the VLO's management team, internal reports and other data and information about the VLO's finances, operations, and liabilities at all relevant times; and (iv) each of the individual Defendants was aware of the Company's dissemination of information to Plaintiff which they knew or recklessly disregarded was materially false and misleading.

199.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing from the Plaintiff the actual misappropriated use of Plaintiff's money.    Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

200.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the price Plaintiff paid for his interest in VLO was artificially inflated. In ignorance of the fact that Plaintiff's loan would be misappropriated, and relying directly or indirectly on the false and misleading statements made by Defendants, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in statements by Defendants to the Plaintiff during the negotiations, Plaintiff paid an artificially high amount for his interest in VLO and was damaged as a result of the securities law violations alleged herein.

201.    At the time of said misrepresentations and omissions, Plaintiff was ignorant of their falsity, and believed them to be true. Had Plaintiff known the truth regarding the Defendants' true use of Plaintiff's investment in VLO, which was not disclosed by Defendants, Plaintiff would not have purchased or otherwise acquired a membership interest in VLO, or, if he had purchased such securities, he would not have done so at the artificially inflated price which he paid.

34

202.    The deceptive conduct of Defendants was made to secure for themselves shares of VLO, and through ownership of those shares, control and use of the US Legal, US Forms, and the U.S. Legal name. Defendants induced Plaintiff to contribute the misappropriated $1,500,000 loan and an additional $2,000,000 to purchase shares from the VLO corporation, and through their mutually owned corporation transferred the $1,000,000 from the VLO account.

203.    The deceptive conduct of Defendants was made in connection with the purchase of all shares of U.S. Legal, the Mississippi corporation, and the issuance of shares of U.S. Legal, LLC, the Delaware corporation to VLO and Frank Edens.

204.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

205.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages in connection with his purchase of a membership interest in VLO.

**WHEREFORE**, premises considered, the Plaintiff prays that this Court grant the following relief:

(a)     award judgment in favor of Plaintiff and VLO, against the Givens Defendants for compensatory damages in the amount of $1,500,000.00 plus punitive damages, interest, attorneys' fees, and costs of court and

(b)     any other such relief as the Court deems proper.

Respectfully submitted by:

_/s/ Lindan J. Hill_____
BRUCE L GORDON (GOR004)
LINDAN J. HILL (HIL057)
Attorneys for the Plaintiffs

35

**OF COUNSEL:**
GORDON, DANA & GILMORE, LLC
600 University Park Place, Suite 100
Birmingham, Alabama  35209
(205) 874-7950 Telephone
(205) 874-7960  Facsimile
bgordon@gattorney.com
lhill@gattorney.com

## CERTIFICATE OF SERVICE

    I hereby certify that on September 30, 2014, I served a copy of the foregoing by filing on CM/ECF and by electronic mail to the following parties or counsel pursuant to Fed. R. Civ. P. 5(b)(2)(E) and by agreement of the parties:

| | |
|---|---|
| Lindan Jerome Hill<br>Bruce Gordon<br>Gordon, Dana & Gilmore, LLC<br>600 University Park Place<br>Suite 100<br>Birmingham, AL 35209<br>205-874-7960<br>205-874-7960 (fax)<br>lhill@gattorney.com<br>bgordon@gattorney.com | Gantt Pierce<br>Lance Swanner<br>Carl Underwood<br>Jacoby & Meyers<br>111 E. Main St.<br>Dothan, Alabama 36301<br>334-794-8000<br>Gantt.Pierce@JacobyMeyers.com<br>Lance.Swanner@JacobyMeyers.com |
| Joseph D. Lane<br>111 E. Main St.<br>Dothan, Alabama 36301<br>JosephLane@Cochranfirm.com<br>334-673-1555 | Chase H. Givens<br>The Cochran Firm – Dothan, PC<br>111 E. Main Street<br>Dothan, Alabama 36301<br>Chase.Givens@USLegal.com<br>334-793-1555 |
| Joseph Siegelman<br>John Givens<br>Michael Allsup<br>The Cochran Firm – Birmingham<br>1929 Third Ave., North<br>Suite 800<br>Birmingham, Alabama 35203<br>JSiegelman@CochranFirm.com<br>JohnGivens@CochranFirm.com<br>Michael.allsup@cochranfirm.com<br>205-244-1115 | Angela Mason<br>The Cochran Firm – Dothan, PC<br>111 E. Main St.<br>Dothan, Alabama 36301<br>AngelaMason@CochranFirm.com<br>334-673-1555 |
| Frank Edens<br>3720 Flowood Dr.<br>Flowood, Mississippi 39232<br>Frank.Edens@uslegal.com<br>301-896-0180 | |

/s/ Lauren Peterson