IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
EDWARD HERSHEWE,              )
                             )
     Plaintiff,              )
                             )        CIVIL ACTION NO.
     v.                      )         1:14cv655-MHT
                             )            (WO)
KEITH GIVENS, et al.,        )
                             )
     Defendants.             )
```

OPINION AND ORDER

Plaintiff Edward Hershewe brings this action against a number of defendants asserting state-law claims of fraud, breach of fiduciary duty, piercing the corporate veil, and corporate dissolution as well as a federal-law claim of a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. The defendants are Keith Givens (K. Givens), John Givens (J. Givens), Chase Givens (C. Givens), Eagle Investments, LLP, Eagle Investments Group, LLP, VLO Management, LLC, and Jacoby & Meyers, LLC. The court has federal-question jurisdiction over

the federal claim pursuant to under 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

The case is now before this court on the defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motions to dismiss will be denied.


## I. LEGAL STANDARD

In considering a defendant's Rule 12(b)(6) motion to dismiss, the court accepts the plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). To survive a motion to dismiss, a complaint need not

2

contain "detailed factual allegations," <u>Bell Atl. Corp.</u>
<u>v. Twombly</u>, 550 U.S. 544, 545 (2007), "only enough
facts to state a claim to relief that is plausible on
its face." <u>Id</u>. at 574.


## II. BACKGROUND

This case arises out of a joint venture between
Hershewe, a lawyer from Missouri, and K. Givens, a
lawyer from Alabama.  As this is a motion to dismiss,
the court accepts any plausible pleading in the
complaint as true.

Several years ago, Hershewe and K. Givens began
discussions for the joint venture.  The idea was to
establish a nationwide set of physical and virtual law
offices across the country under the auspices of Jacoby
& Meyers, a law firm where K. Givens worked and had an
ownership interest.  In order to roll out this business
plan, Hershewe and K. Givens sought a company that

markets pre-made or do-it-yourself legal forms to join the venture.

Hershewe and K. Givens finalized an agreement for a joint venture in 2012.  K. Givens, along with his sons C. Givens and J. Givens, formed VLO Management LLC to manage the joint venture and agreed to transfer the intellectual property, licenses, websites, logos, copyrights, and brand name from Jacoby & Meyers to VLO. In exchange, Hershewe agreed to transfer $ 3.5 million to the company, $ 1.5 million of which would serve as a capital contribution.  A large part of this $ 3.5 million was to be used as a down payment on USLegal, a company that could provide the pre-made legal forms central to the business plan.  As part of the agreement to form VLO, Hershewe obtained a 46.25% interest in VLO; Keith Givens, 20%; C. Givens, 15%; J. Givens, 15%; and two other investors, 1.875% each.  Every member of VLO except for Hershewe was a lawyer at the same law firm.  K. Givens and Hershewe were co-managers of VLO,

while K. Givens, along with C. Givens, controlled the bank account.

Soon after the formation, Hershewe transferred the first $ 1.5 million to VLO.  On the same day, K. Givens transferred $ 1 million from VLO's account to Eagle Investments,[1] a company owned by K. Givens, J. Givens, and C. Givens.  Eagle Investments shortly thereafter transferred over $ 930,000 as a loan payment.  K. Givens made several other questionable transactions from the VLO account in the following months, including spending nearly $ 40,000 on registration and legal fees for Jacoby & Meyers and over $ 150,000 in furniture unrelated to VLO.  VLO's tax filings were changed to

---

1. Eagle Investments, LLP ceased to be a company in 2013-2014.  Hershewe alleges that Eagle Investments Group, LLP, also registered by K. Givens, is its successor.  The court will refer to them collectively as Eagle Investments.

cover up these transfers (doc. no. 101-10).[2]  Hershewe also claims that K. Givens, C. Givens, and J. Givens spent any money transferred from VLO to Eagle Investments and Jacoby & Meyers quickly so that these companies would be undercapitalized.

In July 2012, Hershewe was scheduled to transfer the remaining $ 2 million of the $ 3.5 million investment to VLO in order to purchase the stake in USLegal.  A month beforehand, K. Givens came to Hershewe, warning that USLegal was running out of money and needed more to support the business.  He asked Hershewe co-sign a bank loan for $ 1 million so that VLO could help USLegal with its cash flow; Hershewe agreed.  However, the $ 1 million was not actually for

---

2.  "Attachments to the complaint are considered part of the pleadings for all purposes, including a 12(b)(6) motion."  Reeves v. DSI Sec. Servs., 2008 WL 808612, at *2 n.1 (M.D. Ala. 2008) (Thompson, J.) (internal quotation marks omitted) (quoting Solis-Ramirez v. U.S. Dept. of Justice, 758 F.2d 1426 (11th Cir. 1985)).

US Legal's cash-flow difficulties; rather, K. Givens needed the money because he had depleted VLO's bank account to the point where Hershewe's earlier transfer of $ 2 million was not going to be enough to cover the purchase price for USLegal.

Hershewe now brings this lawsuit alleging, among other claims, that K. Givens, C. Givens, and J. Givens defrauded him of his investment and violated their fiduciary duty to VLO.

## III. DISCUSSION

The defendants move under Rule 12(b)(6) to dismiss all claims.  The court will address each in turn.

### A. Civil RICO

The court will first analyze Hershewe's only federal claim: a civil claim under RICO against all defendants.  The defendants argue that this claim should be dismissed because Hershewe does not have

standing to bring the claim and because he does not plead the substantive elements.  The court finds that he meets these requirements.

### 1.  Standing

"Any person injured in business or property" by reason of a RICO claim has standing to sue, "except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities."  18 U.S.C. § 1964.  The defendants argue that Hershewe lacks standing because he relies on fraud regarding an investment contract that qualifies as a security and thus falls within the standing exception.[3]  The questions then are, How do federal

---

3. In some parts of their motions to dismiss, the defendants argue that Hershewe's investment is a security under the definition provided by 15 U.S.C. § 77b, while in other parts they argue it is not a security.  Compare, e.g., K. Givens Mot. to Dismiss (doc. no. 114) at 18 (is a security) with id. at 31 (continued...)

securities laws define the term 'security', and Does Hershewe's investment fit within this category?

Section 10b-5 of the federal securities laws prohibits the employment of manipulative or deceptive devices "in connection with the purchase or sale of a security." See 17 C.F.R. § 240.10b-5. Among its many definitions, the term "security" can include an investment contract. 15 U.S.C. § 77b. Hershewe's investment in VLO was an "investment contract" for purposes of federal securities law only if there was "(1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others." Sec. and Exch. Comm'n v. Unique Fin. Concepts, Inc., 196 F.3d 1195, 1199 (11th Cir. 1999). The court will analyze each prong in turn.

---

n.10 (is not a security). The court assumes these are arguments in the alternative.

Under the first prong of this test, the required "investment of money refers to an arrangement whereby an investor commits assets to an enterprise or venture in such a manner as to subject himself to financial loss." Gilmore v. MONY Life Ins. Co. of Am., 165 F. Supp. 2d 1276, 1284 (M.D. Ala. 2001) (Thompson, J.). This prong is easily met. The complaint describes Hershewe's "equity investment" of $ 3.5 million for a "legal business venture." It is clear that Hershewe committed assets in a way that subjected him to a loss.

The second prong, or 'common enterprise,' is also easily met. A common enterprise "exists where the fortunes of the investor are interwoven with and dependent on the efforts and success of those seeking the investment or of third parties." Unique Fin. Concepts, Inc., 196 F.3d at 1199. Here, Hershewe invested his money in VLO, and he would gain or lose money based on VLO's performance. Their efforts were interwoven and thus formed a common enterprise.

10

The final prong, and the one most at issue in this case, requires that the expectation of profits is derived solely from the efforts of others. "Solely is not interpreted restrictively." Sec. and Exch. Comm'n v. Merch. Capital, LLC, 483 F.3d 747, 755 (11th Cir. 2007). Instead, "[t]he crucial inquiry [for the third prong] is the amount of control that the investors retain under their written agreements." Unique Fin. Concepts, Inc., 196 F.3d at 1201 (internal quotation marks omitted). This amount of control is measured from the "time the interest is sold, rather than at some later time after the expectations of control have developed or evolved." Merch. Capital, LLC, 483 F.3d at 756. Economic reality of the arrangement governs over form. Id. at 755.

In the complaint, Hershewe states that he was a co-manager and part-owner of VLO. Although he does not

provide governing documents that clearly define his role,[4] the terms co-manager and part-owner imply Hershewe's ability to make significant decisions regarding VLO's business. Indeed, the term "co-manager" suggests that he is K. Givens's equal when making decisions. Even if K. Givens later excluded him from all business decisions, the focus of this test is the relationship at the formation of the business rather than how it evolved. Id. at 756. Because Hershewe was originally a co-manager and had control over his investment, the investment was not an investment contract and therefore not a security. As such, he has standing to bring a civil RICO claim.[5]

---

4. The Second Amended Complaint states that it provides the by-laws in Exhibit 8. However, Exhibit 8 (doc. no. 101-17) appears to be a lease agreement and not the by-laws.

5. Hershewe initially alleged a 10b-5 claim in the alternative to the civil RICO claim. However, he admitted in open court that he did not state a claim (continued...)

## 2.   Substantive Elements

The defendants next argue that Hershewe does not meet the substantive requirements for pleading a civil RICO claim under 18 U.S.C. § 1962(c).  To establish a RICO claim, a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  <u>Williams v. Mohawk Indus., Inc.</u>, 465 F.3d 1277, 1282 (11th Cir. 2006).  As a "breed of fraud claims," civil RICO allegations "must be pled with an increased level of specificity."  <u>Ambrosia Coal & Const. Co. v. Pages Morales</u>, 482 F.3d 1309, 1316 (11th Cir. 2007).  As with other fraud claims, the plaintiff must identify the "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3)

_____

for relief on this issue, and the court has since dismissed the claim (doc. no. 144).

13

the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1291 (11th Cir. 2010). The particularity requirement serves to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior." <u>Brooks v. Blue Cross and Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1370-71 (11th Cir. 1997) (internal quotation marks omitted).

The court first examines whether Hershewe pleads conduct of an enterprise. An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961. It "is proved by evidence of an ongoing organization, formal or informal and by evidence that the various associates function as a unit." <u>Williams</u>, 465 F.3d at 1284. "[T]he complaint

should inform each defendant of the nature of his alleged participation in the fraud." Ambrosia Coal, 482 F.3d at 1317 (internal quotation marks omitted).

Hershewe claims that the "Givens defendants"--K. Givens, C. Givens, and J. Givens--formed an enterprise to artificially and illegally depreciate the value of VLO corporate assets and defraud him of his interest in VLO. Hershewe in essence alleges two steps to show enterprise. First, he pleads that K. Givens fraudulently induced Hershewe to invest $ 3.5 million in VLO by promising to contribute Jacoby & Meyers assets, furthered his fraud by inducing Hershewe to guarantee another $ 1 million loan, and continues to defraud Hershewe of his interest by filing false tax returns regarding Hershewe's contribution. This set of claims puts K. Givens on notice of Hereshewe's simple charge: K. Givens, through VLO and Jacoby & Meyers, is stealing Hershewe's contribution to VLO for his own benefit.

15

Second, Hershewe argues that K. Givens served as the agent of C. Givens and J. Givens and that his acts are attributable to them. A party can allege actual or apparent authority as a basis for holding a principal liable for the actions of an agent. 3 Am. Jur. 2d Agency § 15. An actual agency relationship--where the principal intended for the agent to act on his behalf--can either be express through a formal contractual agreement or implied based on the facts and circumstances of a particular case. <u>Fisher v. Comer Plantation, Inc.</u>, 772 So. 2d 455, 465 (Ala. 2000). On the other hand, to allege liability based on apparent authority, a party need not prove that the principal intended the agent act on his behalf but rather that the principal "by his acts or conduct has clothed the agent with the appearance of authority." <u>Johnson v. Shenandoah Life Ins. Co.</u>, 281 So. 2d 636, 640 (Ala. 1973). "The question of agency is one for the trier of fact; and the existence and scope of a principal-agent

16

relationship is normally a question of fact to be determined by the jury." Calvert v. Cas. Reciprocal Exch. Ins. Co., 523 So. 2d 361, 362 (Ala. 1988).

The court finds that Hershewe has alleged adequately that K. Givens was an actual agent of C. Givens and J. Givens. While Hershewe did not plead that there was a formal contract between K. Givens and his sons, the facts and circumstances pled could indicate an implied agency relationship. Both C. Givens and J. Givens accepted their shares in VLO after K. Givens negotiated the contract with Hershewe, and both had partial ownership of Eagle Investments. Neither raised any issue when $ 1 million was transferred from VLO to Eagle Investments, when over $ 930,000 of that $ 1 million was used to pay off a loan, or when additional funds from VLO were spent for Eagle Investments or their personal businesses. Moreover, C. Givens had his name the Eagle Investments bank account into which VLO transferred the money.

17

With this pleading, Hershewe alerted C. Givens and J. Givens that their principal-agent relationship with K. Givens, and his actions taken on their behalf, is the basis of the fraud claim. <u>Brooks</u>, 116 F.3d at 1370-71 (internal quotation marks omitted). While the court makes no determination on the truth of this pleading, it is sufficient to survive a 12(b)(6) motion.

The defendants next challenge whether there was a pattern of racketeering activity. In particular, they argue that Hershewe failed to plead two predicate acts to constitute a pattern and that the alleged activity is not continuous. For the purposes of RICO, a "pattern of racketeering activity" first requires at least two predicate acts. <u>Mohawk</u>, 465 F.3d at 1283. Here, Hershewe alleges several acts of mail fraud and/or wire fraud.[6]   He pleads that K. Givens's promise to

---

6. Both mail fraud and wire fraud "require that a person (1) intentionally participates in a scheme or (continued...)

18

contribute Jacoby & Meyers's intellectual property led him to make the initial agreement to invest in VLO; K. Givens's assurances that the original $ 1.5 million would be a capital contribution that he would get back induced him to make the initial wire transfer; K. Givens's false representation that USLegal needed additional cash led him to co-guarantee the $ 1 million loan to purchase stock in USLegal; and K. Givens's later promise to spend the $ 2 million transfer on USLegal--rather than for his personal benefit--led him to transfer this final amount.  Moreover, Hershewe alleges that VLO's filing of false tax returns continues to depreciate the value of VLO, of which Hershewe is a member.  These predicate acts are all related to the underlying purpose of defrauding

---

artifice to defraud another of money or property, and (2) uses or causes the use of the mails or wires for the purpose of executing a scheme or artifice." United States v. Ward, 486 F.3d 1212, 1221-22 (11th Cir. 2007).

Hershewe and draining VLO assets.   They therefore meet the pleading requirement of two predicate acts towards a common purpose.

In addition to pleading two predicate acts, Hershewe must also allege that the acts "amount to or pose a threat of <u>continued criminal activity</u>." <u>Jackson v. BellSouth Telecomm.</u>, 372 F.3d 1250, 1264 (11th Cir. 2004) (emphasis in original).   A plaintiff can meet this requirement in one of two ways.   First, he can allege that the pattern of conduct is "closed," meaning that there was a past period of repeated conduct.   <u>Id</u>. at 1265 (quoting <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 241-42 (1989)).   Alternatively, he can allege that the pattern of conduct is "open," meaning that there is a specific threat of ongoing conduct in the future or that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." <u>Id</u>. (quoting <u>H.J. Inc.</u>, 492 U.S. at 242).   The underlying concept is that a pattern must continue over

a substantial period of time--usually more than a year; two discrete acts within a short period of time are insufficient. A plaintiff can allege this period of time occurred in the past, in a 'closed' pattern, or will occur in the future, in an 'open' pattern.

Hershewe pleads an open pattern--i.e., that the racketeering activity is ongoing and threatens to continue indefinitely. In particular, he notes that the defendants continue to falsify tax returns in order to cover up the dissipation of assets. Additionally, K. Givens, C. Givens, and J. Givens continue to have exclusive control over financial decisions at VLO, which makes possible their continuing fraud of using Hershewe's investment in VLO for their own benefit. In other words, VLO's regular way of doing business now entails those in control dissipating VLO's assets for their own benefit. Such an allegation of a continuing scheme meets the continuity requirement.

As Hershewe meets both the standing and substantive requirements for a RICO claim, the court denies the 12(b)(6) motions on this claim.


## B. Fraud

Hershewe next alleges that K. Givens, C. Givens, J. Givens, and Eagle Investments defrauded him of his investment in VLO, and each defendant now moves to dismiss for failure to state a claim. The court denies the motions to dismiss this claim.

Under Alabama common law, fraud can be based on the misrepresentation or failure to disclose a present material fact or on a fraudulent promise to act or not to act in the future. See Penmont, LLC v. Blue Ridge Piedmont, LLC, 607 F. Supp. 2d 1266 (M.D. Ala. 2009) (Thompson, J.) (describing the different types of fraud). Here, Hershewe contends that K. Givens, C. Givens, and J. Givens promised to spend his $ 3.5 million investment for VLO's operation and growth, but

22

instead used it for their own benefit.  In other words,
he alleges promissory fraud, claiming that they falsely
promised to use the investment towards VLO's business.

To make out a claim for promissory fraud, a
plaintiff must allege "(1) a false representation, (2)
of material existing fact, (3) reasonably relied upon
by the plaintiff, (4) who suffered damage as a
proximate consequence of misrepresentation." Id. at
1273 (quoting S.B. v. St. James Sch., 959 So. 2d 72,
101 (Ala. 2006)).  The plaintiff must also show that at
the time of the misrepresentation the defendant "had
the intention not to perform the act as promised" and
had the "intent to deceive." Id. (quoting St. James,
959 So. 2d at 101). The intent to deceive "can be
established through circumstantial evidence that
relates to events that occurred after the alleged
misrepresentations were made." Byrd v. Lamar, 846 So.
2d 334, 343 (Ala. 2002).  As discussed above, although
a plaintiff can allege intent generally, the

circumstances constituting fraud must be pled with particularity.  Fed. R. Civ. P. 9(b).

### 1.  K. Givens

Hershewe claims that, during negotiations, K. Givens represented both that he would use Hershewe's $ 3.5 million investment to advance VLO's business and that he would transfer Jacoby & Meyers's intellectual property to VLO.  However, K. Givens did not fulfill either promise.  He used the $ 3.5 million for his own businesses, including transferring $ 1 million of the initial investment into Eagle Investments, and he failed to transfer any intellectual property to VLO. As evidence that K. Givens intended to deceive at the moment of the promise, Hershewe notes that Jacoby & Meyers never transferred any intellectual property and that K. Givens transferred Hershewe's initial $ 1 million to his personal account the same day Hershewe wired the money to VLO.

These detailed allegations put K. Givens on notice of the alleged fraud.  Brooks, 116 F.3d at 1370-71. His failure to transfer any intellectual property assets to VLO and the timing of the $ 1 million transfer to his own account provide circumstantial evidence of K. Givens's intent to deceive when VLO was formed.  Lamar, 846 So.2d at 343.  The court finds that these pleadings state a claim for fraud with particularity and thus denies the motion to dismiss on this claim.

### 2.  C. Givens and J. Givens

Although the complaint details a number of K. Givens's actions that constitute fraud, it does not have the same level of detail for C. Givens or J. Givens.  Indeed, the complaint never describes their individual actions separate from K. Givens.  It only provides any specificity on three occasions: stating that C. Givens's name was on the Eagle Investments'

25

bank account along with K. Givens; describing C. Givens's joint control of VLO's bank account with K. Givens; and mentioning that K. Givens delegated management of VLO to C. Givens and J. Givens. None of these statements allege a specific action by C. Givens or J. Givens that they took alone. These statements do not qualify as pleading with particularity as to C. Givens or J. Givens. <u>See Morrow v. Green Tree Servicing, LLC</u>, 360 F. Supp. 2d 1246, 1250 (M.D. Ala. 2005) (Thompson, J.).

Alternatively, Hershewe makes the claim that K. Givens at all times acted as the actual or apparent agent for C. Givens and J. Givens. As discussed above, this agency claim meets the pleading requirements.

### 3.  Eagle Investments

Hershewe last alleges that Eagle Investments is liable for fraud because K. Givens acted as its agent. According to the complaint, K. Givens was part-owner

and manager of Eagle Investments and transferred funds out of VLO's account into one owned by Eagle Investments.   K. Givens's position within Eagle Investments gave him express power as an actual agent to act on its behalf.   Moreover, Eagle Investments's failure to protest the additional money flowing into its bank account suggests that K. Givens had the power to manage its finances and act on its behalf.   Based on K. Givens's formal position as well as the facts and circumstances of how he managed Eagle Investments, the court finds that Hershewe pleads an actual agency relationship between K. Givens and Eagle Investments and therefore denies the motion to dismiss on this claim.

### C.  Breach of Fiduciary Duty

Hershewe next brings direct and derivative breach-of-fiduciary-duty claims against K. Givens, C.

Givens, and J. Givens.[7]   Each moves to dismiss.   The court denies the motions.

### 1. Direct Claim

In order to have standing for a direct claim of breach of fiduciary duty, plaintiffs must have "suffered a harm unique to them." <u>Altrust Fin. Servs., Inc. v. Adams</u>, 76 So. 3d 228, 245 (Ala. 2011). However, "[i]f the wrong directly damages the corporation and its assets from waste, conversion and intentional mismanagement, the claim is the corporation's." <u>Mobile Attic, Inc. v. Cash</u>, 2012 WL

---

7. It is unclear whether the plaintiffs actually plead this claim against J. Givens.   The heading of Count II does not include J. Givens, but the paragraphs under it and the request for relief do apply to him. To avoid "elevat[ing] form over substance," the court considers the claim against J. Givens.   <u>See</u> <u>Valentine v. Legendary Marine FWB, Inc.</u>, 2010 WL 1687738, at *2 (N.D. Fla. 2010) (Rodgers, J.).   The court therefore denies J. Givens's motion to strike paragraphs 121 and 122 (doc. no. 115) in relation to J. Givens.

2120794, at *2 (M.D. Ala. 2012) (Thompson, J.) (quoting id. at 241).  For example, claims of mismanagement and self-dealing are "quintessential derivative injury, merely incidental to status as a stockholder." Mobile Attic, 2012 WL 2120794, at *2 (internal quotation marks omitted).

Investors can allege a unique harm--and thus a direct claim--where the nature of the harm was an inducement to provide funding to enter a joint venture or guarantee a loan.  In DGB, LLC v. Hinds, 55 So. 3d 218, 222 (Ala. 2010), the plaintiffs originally purchased an interest in a real-estate-development limited liability company.  After this initial investment, at the request of the managers of the LLC, the plaintiffs agreed to fund an additional $ 2.5 million investment and to guarantee an additional $ 7.5 million loan in order to purchase a specific piece of property that the LLC told them was worth $ 10 million. Id. at 222-23.  Unbeknownst to the plaintiffs, the

29

property had been purchased days earlier for half that price by a company partially owned by the same defendants who owned the LLC. Id. The court held that the plaintiffs had standing to sue on direct claims because "the defendants made representations to and concealed information directly from [the plaintiffs] regarding the circumstances" of the joint venture. Id. at 229; see also ECR Properties, LLC v. Camden Cnty. Dev., LLC, 998 F. Supp. 2d 1295, 1310-11 (M.D. Ala. 2014) (Fuller, J.) (finding standing for direct claim where plaintiffs were induced by a false representation to make a capital contribution to a joint venture).

The defendants make three arguments against Hershewe's claim of direct breach of fiduciary duty: Hershewe lacks standing to bring the claim, he fails to allege a fiduciary duty, and that, even if there was a fiduciary duty, there was no breach of it. The court rejects all three arguments.

30

The first issue is whether Hershewe has standing to bring this direct claim.  Similar to the plaintiffs in Hinds, Hershewe was induced to provide a capital contribution and later to guarantee personally a loan based on a false premise: that the investment would be used for the benefit of VLO.  The alleged wrong for this claim was based on the inducement to invest money and not on K. Givens's misappropriation of VLO funds.[8] Because K. Givens "made representations directly to and concealed information directly from" Hershewe when inducing him to invest, Hershewe has standing to bring a direct claim for breach of fiduciary duty.  Hinds, 55 So. 3d 218 at 229.

---

8. Indeed, this holding on standing for a direct claim is limited to the inducement alone.  To the extent Hershewe alleges direct, versus derivative, injury to VLO from K. Givens's self-dealing use of VLO funds, which affects all members of the LLC, the claim is rejected.  See Mobile Attic, 2012 WL 2120794, at *2.

31

The defendants next contend that Hershewe fails to allege the existence of a fiduciary duty between the parties. Breach of fiduciary duty sounds in tort law. Hensley v. Poole, 910 So.2d 96, 106 (Ala. 2005). As such, Hershewe has to plead duty, causation, breach, and damages. Under Alabama law, members of an LLC owe each other a duty of loyalty and a duty of care. 1975 Ala. Code § 10A-5-3.03. These duties include accounting for property, profit, or benefits derived from the business as well as refraining from self-dealing and grossly negligent, reckless, or intentional misconduct. Id. Each member must also act in a manner consistent "with the obligation of good faith and fair dealing." Id.

The complaint sufficiently pleads that K. Givens had a fiduciary duty to Hershewe, that he violated that duty, and that the breach caused Hershewe damages. The complaint makes clear that they were both members of the LLC and accordingly owed each other a duty of care,

32

duty of loyalty, and duty to act in good faith. <u>See</u> <u>id</u>.; Compl. ¶ 107. Givens first induced Hershewe to invest $ 1.5 million in VLO and then used it for his personal benefit; and K. Givens misrepresented the reason for the $ 1 million loan in order to induce Hershewe into guaranteeing it. This self-dealing on both issues violates the duty of loyalty as well as the duty to deal in good faith.

In sum, Hershewe has standing and properly pled a direct claim for breach of fiduciary duty against K. Givens. Based on the agency theory discussed above, he also pled a claim against C. Givens and J. Givens. The court therefore denies the motions to dismiss this claim.

## 2. Derivative Claim

To plead a derivative claim, a plaintiff must meet both the procedural requirements for pleading a derivate claim and the substantive requirements for

breach of fiduciary duty.  The court will first turn to whether Hershewe met the procedures outlined in the federal rules and then move to the substantive claim against each defendant.


### i.  Procedural Requirements

The first question is whether Hershewe properly pleads a derivative claim.  In order to make a derivative claim under federal procedural rules, a plaintiff must allege that the shareholder was a member of the corporation at the time of the transaction and that the action is not a collusive attempt to confer jurisdiction.  Fed. R. Civ. Proc. 23.1.  He must also plead with particularity any demand he made to those in charge to change their actions or the reasons for not making such an effort, i.e., why such an effort would have been futile.  Id.; 1975 Ala. Code § 10A-5-4.04.

As neither party disputes whether Hershewe was a member of VLO and no evidence suggests collusion,[9] the court turns to whether he pleads demand or futility with particularity.

When analyzing a demand or futility argument, federal courts look to state substantive law. Playford v. Lowder, 635 F. Supp. 2d 1303, 1307 (M.D. Ala. 2009) (Thompson, J.) (quoting Kamen v. Kemper Fin. Serv., Inc, 500 U.S. 90, 95-6, 101-103 (1991)). Here, it is undisputed that Hershewe did not make a pre-lawsuit demand, so the question is whether he can demonstrate futility. Although courts have not elaborated on the futility requirement for limited-liability companies, they have evaluated a similar law for corporations. To

---

9. Even though Hershewe does not allege collusion, "[f]ailure to plead lack of collusion is not fatal to a derivative action where the facts alleged in the complaint do not establish the existence of collusion." Plunkett v. Poyner, 2009 WL 5176542, at *5 (S.D. Fla. 2009) (Cohn, J.). K. Givens has not argued collusion, and the facts do not suggest it.

demonstrate futility under Alabama corporations law, a plaintiff must show "such a degree of antagonism between the directors and the corporate interest that the directors would be incapable of performing their duty." Davis v. Dorsey, 495 F. Supp. 2d 1162, 1174 (M.D. Ala. 2007) (Thompson, J.) (quoting Elgin v. Alfa Corp., 598 So. 2d 807, 815 (Ala. 1992)). A court can consider whether a majority of the directors are accused of breaches of fiduciary duty by the plaintiff, and the futility requirement is generally "deemed satisfied if the directors or a majority thereof are shown to have been under the control of the alleged wrongdoers." Id. (internal citations and quotation marks omitted).

The same concepts can be applied to the limited-liability company in this case. Hershewe alleges that he did not hold a majority interest in VLO and that he would not have been able to convince other members to take action, as they were all part of the

36

same law firm. Moreover, three defendants in this
case--K. Givens, C. Givens, and J. Givens--own 50% of
VLO, rendering any attempt to secure a majority of
VLO's members to bring this lawsuit futile. The court
therefore finds that Hershewe met the procedural
requirements for a derivative claim and turns to the
substantive merits.

### ii. Substantive Requirements

The defendants allege that Hershewe does not
plausibly claim the underlying elements for breach of
fiduciary duty for a derivative claim.

As stated above, Hershewe must allege a harm on
behalf of VLO in order to state a derivative claim.
According to the complaint, K. Givens used his position
as co-manager of VLO to funnel money into his personal
enterprises, including a $ 1 million transfer and over
$ 100,000 worth of purchases for another business he
owned. In addition, K. Givens and C. Givens had

37

control of the Eagle Investments bank account to which the money was transferred and from which they spent money for their personal benefit. Taking money from a company for personal gain is the epitome of self-dealing. As such, Hershewe plausibly alleges a derivative claim for breach of the fiduciary duty of loyalty against K. Givens as well as his sons on the agency theory.

Because Hershewe meets the substantive and procedural requirements for pleading a derivative claim for breach of fiduciary duty, the court denies the motions to dismiss on this issue.


### D. Piercing the Corporate Veil

Hershewe next claims that the court should pierce the veil corporate veil of VLO, Eagle Investments, and Jacoby & Meyers because K. Givens, C. Givens, and J. Givens used these companies as alter egos to avoid personal liability. Each defendant moves to dismiss.

38

Under Alabama law, a plaintiff can move to pierce the corporate veil of an LLC and "impose liability directly" on the members. Filo America, Inc. v. Olhoos Trading Co., LLC, 321 F. Supp. 2d 1266, 1268 (M.D. Ala. 2004) (Thompson, J.) (quoting Culp v. Econ. Mobile Homes, Inc., 895 So. 2d 857, 859 (Ala. 2004)) (internal quotation marks omitted).  The purpose of piercing the corporate veil is to "furnish[] a means for a complainant to reach ... [an] individual upon a cause of action that otherwise would have existed only against the ... corporation." Gilbert v. James Russell Motors, Inc., 812 So.2d 1269, 1273 (Ala. Civ. App. 2001) (internal quotation marks omitted).  Put differently, if a plaintiff sues a defendant corporation and the corporation lacks assets, piercing the corporate veil provides a "means by which to collect any ... award against [the defendant corporation] from another source, namely [the

corporation's]  shareholders."   <u>Stephens  v.  Fines</u>

<u>Recycling,  Inc.</u>, 84 So. 3d 867, 877 (Ala. 2011).

The defendants argue that piercing the corporate veil is inapplicable in this case because every claim asserted against Eagle Investments and Jacoby & Meyers can be, and has been, asserted against K. Givens, C. Givens, and J. Givens.  In other words, they argue that this case is not the normal context for piercing the corporate veil where an individual is attempting to avoid liability through a sham corporation.

The court rejects the defendants' invitation to prejudge the outcome of this case.  For example, the defendants could argue, and a jury could find, that K. Givens, C. Givens, and J. Givens are protected from individual liability for Eagle Investments and Jacoby & Meyers's actions because of the corporate structure. In that case, Hershewe's claim that these companies are undercapitalized and alter egos of the individual defendants would meet the purpose of piercing the

corporate veil because piercing the veil might be the only alternative means to collect an award.   <u>Fines Recycling</u>, 84 So. 3d at 877.   The court therefore denies the motion to dismiss this claim.


## E. Corporate Dissolution

Hershewe next brings a corporate-dissolution count against VLO and its subsidiaries.   VLO contends that this count should be dismissed because the court lacks subject-matter jurisdiction and because Hershewe failed to state a claim for which relief can be granted.[10]

Alabama law provides for judicial dissolution of a limited-liability company:

―――――――――――――――

10. VLO listed general affirmative defenses at the end of its answer, including these two objections. Although not clear, the court assumes the affirmative defenses apply to each claim against VLO. Additionally, several other defendants allege the same defenses to corporate dissolution; however, they cannot assert these defenses on VLO's behalf.

41

> "On application by or for a member, the circuit court for the county in which the certificate of formation is filed may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the governing documents."

Ala. Code 1975 § 10A-5-7.02.

The court must first examine whether it has subject-matter jurisdiction over this claim. VLO argues that there is no subject-matter jurisdiction because the statute only allows the Alabama circuit court, and not a federal court, to dissolve a company. In essence, they argue that the state legislature, by limiting jurisdiction to only circuit courts, barred federal-court review. Federal courts, however, have jurisdiction to hear state-law claims under supplemental or diversity-of-citizenship jurisdiction, and corporate law is not one of the limited spheres where federal courts cannot exercise this jurisdiction, such as the granting of divorce or a decree of alimony. Cf. Ankenbrandt v. Richards, 504 U.S. 689, 704 (1992)

42

(upholding domestic-relations exception to federal-court jurisdiction, but narrowing it to encompass only issuance of divorce, alimony, or a child custody decree). Indeed, a state legislature cannot avoid federal-court jurisdiction simply by enacting a statute that requires the case be brought in state court. Cf. Jolly v. Pittore, 1993 WL 277284, at *2 (S.D.N.Y. 1993) (Martin, J.) (exercising jurisdiction for corporate dissolution where Delaware statute specified that the Court of Chancery could decree dissolution).

The next issue is whether Hershewe plausibly alleges why it is not reasonably practicable to carry on VLO's business in accordance with the governing documents. Although Alabama law does not define 'reasonably practicable,' and Alabama courts have not ruled on the issue, other state courts have addressed it. For example, Delaware courts, interpreting an almost identical statute, have labeled dissolution as

an "extreme remedy" and identified only two situations where it is not reasonably practicable to operate the business: "(i) where there is deadlock that prevents a corporation from operating and (ii) where the defined purpose of the entity is fulfilled or impossible to carry out." Wiggs v. Summit Midstream Partners, LLC, 2013 WL 1286180, at *12 (Del. Ch. 2013); see also In re Arrow Inv. Advisors, LLC, 2009 WL 1101682, at *4 (Del. Ch. 2009). Other state courts have stressed that deadlock or breaches of fiduciary duty alone cannot be grounds for dissolution but must instead be tied to the inability of the business to conform with the governing documents. In re 1545 Ocean Ave., LLC, 893 N.Y.S.2d 590, 596 (N.Y. App. 2010) (interpreting almost identical statute to the one at issue here)

The court agrees with the interpretation of the Delaware and New York courts. Under the plain language of the Alabama statute, a member must plead how managerial deadlock or a fundamental change in the

44

company, the market, or the legal landscape makes it impossible to achieve the business's purpose.

Hershewe meets this pleading standard. He describes a company where one member is suing his co-manager and two other members for embezzling money from the company for their own purposes and failing to carry out the core purpose of the joint venture. Unlike a case where one executive at a large corporation is embezzling, the alleged fraud and breach of fiduciary duty here implicates four out of the six members of the LLC, a large portion of the capital being used for the business, and the intellectual property central to the business. The court finds that it not reasonably practicable to carry on the business given this deadlock. It therefore denies the motion to dismiss on this claim.

\*\*\*

Accordingly, it is ORDERED that the motions to dismiss (doc. nos. 111, 112, 114, 115, 116) are denied.

DONE, this the 29th day of September, 2015.

    /s/ Myron H. Thompson    
UNITED STATES DISTRICT JUDGE

46