IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| **EDWARD HERSHEWE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 1:14cv655-MHT |
| ) | (WO) |
| **KEITH GIVENS, et al.,** ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Plaintiff Edward Hershewe brings this action against a number of defendants asserting state-law claims of fraud, breach of fiduciary duty, piercing the corporate veil, and corporate dissolution as well as a federal-law claim of a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.  The defendants are Keith Givens (K. Givens), John Givens (J. Givens), Chase Givens (C. Givens), Eagle Investments, LLP, Eagle Investments

Group, LLP, VLO Management, LLC, and Jacoby & Meyers, LLC.  The court has federal-question jurisdiction over the federal claim pursuant to under 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

The case is now before this court on the Hershewe's motion for a preliminary injunction and motion for attachment and seizure.  The court will grant the motion for attachment and will deny the motions for seizure and a preliminary injunction.


## I. BACKGROUND

This case arises out of a joint venture between Hershewe, a lawyer from Missouri, and K. Givens, a lawyer from Alabama.[1]

---

1. Unlike a motion to dismiss, the court must weigh the facts in a motion for preliminary injunction. Therefore, the background description in this opinion differs from that of the opinion on the motions to dismiss.

Several years ago, Hershewe and K. Givens began discussions for a joint venture. The idea was to establish a nationwide set of physical and virtual law offices across the country under the auspices of Jacoby & Meyers, a law firm where K. Givens worked and had an ownership interest. In order to roll out this business plan, Hershewe and K. Givens sought out a company that marketed do-it-yourself legal forms to join the venture, or to purchase. At first, they engaged Lexis-Nexis about using some of its pre-existing software and even drafted several memoranda of understanding with them. However, Lexis-Nexis dropped out of the deal, leaving the remaining parties to look for either another partner or for an acquisition.

Hershewe and K. Givens finalized an agreement for a joint venture in 2012. The nature of this agreement is at the heart of the dispute. Both parties agree that Hershewe agreed to pay $ 3.5 million and that part of the $ 3.5 million would be used to pay for an 80 %

equity stake in USLegal, a company that could provide the pre-made legal forms central to the joint venture. Additionally, Jacoby & Meyers agreed to contribute its brand and expertise.  As part of the agreement to form VLO, Hershewe obtained a 46.25 % interest in VLO; Keith Givens, 20%; Chase Givens, 15 %; John Givens, 15 %; and two other investors, 1.875 % each.  Every member of the LLC except for Hershewe was a lawyer at the same law firm.  K. Givens and Hershewe were co-managers of VLO, while K. Givens, along with C. Givens, controlled the bank account.  The dispute is whether a portion of Hershewe's investment was a capital contribution to be used on behalf of VLO or a direct payment to K. Givens as a buy-in to VLO.

Soon after the formation, Hershewe transferred the first $ 1.5 million of the $ 3.5 million investment to VLO.  On the same day, K. Givens transferred $ 1 million out of VLO's bank account to a bank account of

Eagle Investments[2] (MidSouth Bank account number 10088686), a company owned by K. Givens, J. Givens, and C. Givens.  Eagle Investments shortly thereafter transferred over $ 930,000 as a loan payment on a credit line it had taken out for operating expenses. Several other transactions occurred in the following months from the VLO account, including expenditures of nearly $ 40,000 on registration and legal fees for Jacoby & Meyers, several thousand dollars for repairs to "the Grand," a property owned by K. Givens, and over $ 150,000 in furniture for Eagle Investments' properties.

In July 2012, Hershewe was scheduled to transfer the remaining $ 2 million to VLO in order to purchase the stake in USLegal.  A month beforehand, K. Givens

---

2. Eagle Investments, LLP (Eagle I) ceased to be a company in 2013-2014. Hershewe alleges that Eagle Investments Group, LLP (Eagle II), also registered by K. Givens, is its successor.  The court will refer to them collectively as Eagle Investments.

came to Hershewe, warning that USLegal was running out of money and needed more to support the business. Hershewe agreed to co-sign a bank loan for $ 1 million for VLO so that VLO could help USLegal with its cash flow. The parties dispute whether this $ 1 million was for USLegal's cash-flow problems or whether it actually was used as part of the purchase price for USLegal because K. Givens had spent the money intended for that purpose for his own benefit. They also dispute whether K. Givens and others have since doctored VLO's taxes to cover up the alleged fraud.

Hershewe brought this lawsuit and originally moved for a temporary restraining order as well as seizure and attachment. The court denied the motion for a temporary restraining order and asked for additional clarification of the purposes of the motion for preliminary injunction and the motion for prejudgment seizure or attachment. These motions are now before the court.

### III. DISCUSSION

Hershewe moves for a preliminary injunction under Federal Rule of Civil Procedure 65 and, in the alternative, requests prejudgment seizure and prejudgment attachment under Rule 64.

### A.   Preliminary Injunction

To warrant a preliminary injunction a plaintiff must demonstrate (1) a substantial likelihood of success on the merits; (2) that irreparable injury will result unless the injunction is issued; (3) that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that granting the injunction is in the public interest.  <u>Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Intern.</u>, 238 F.3d 1300, 1308 n.18 (11th Cir. 2001).  Because the court does not find a substantial

likelihood of success on the merits, the court denies the preliminary injunction.

The central factual dispute in this case is the nature of the contract that Hershewe and K. Givens entered when forming VLO.  Hershewe alleges that he agreed to contribute $ 3.5 million to VLO, with $ 1.5 million of the total as a capital contribution, and that K. Givens fraudulently used this money for his own purposes.  K. Givens disagrees, contending that the $ 1.5 million was a payment for Jacoby & Meyers's brand name and personnel and that he could use the $ 1.5 million for his own benefit.

The facts of this case are truly puzzling.  Both sides agree that there was an agreement regarding $ 3.5 million, but that no one documented any part of the contract in writing.  Hershewe argues that the $ 1.5 million was an investment.  He presents one email stating that the $ 1.5 million was a capital contribution meant to come back to him--i.e., that it

8

was start-up capital to be used for VLO and eventually repaid to him by VLO. However, this email was regarding a memorandum of understanding that was never signed, and the memorandum was based on an earlier proposed deal with Lexis-Nexis that fell through.[3] On the other hand, K. Givens testified that the $ 1.5 million was a direct payment to him for contributing $ 10 million in non-cash assets to VLO and could be used for his personal benefit. He claims he could have bought a house with the money or given it to charity even though the money went into VLO's bank account rather than his personal bank account.

The court finds that the evidence is in equipoise. It is certainly plausible that K. Givens fraudulently induced Hershewe into investing in VLO with the purpose

---

3. Hershewe maintains that he would have been taking the place of Lexis-Nexis in this deal and that is why the email referenced the old memorandum. However, even if this is true, it does not mean that K. Givens agreed to this condition or that it was part of the final contract.

of using the money for his personal benefit. The direct transfer to VLO's account bolsters this theory. However, given that Hershewe made a $ 3.5 million deal without a written contract, it is also plausible he paid K. Givens $ 1.5 million to use how he saw fit in exchange for non-cash assets. K. Givens may have had the obligation to spend as much money as necessary to complete his part of the oral contract--that is, transfer assets, turn over intellectual property, open new offices, etc.--but the $ 1.5 million might not have been earmarked for these specific tasks but rather meant as a general payment that K. Givens could use as he saw fit. The court cannot grant preliminary relief where there is no written contract and a reasonable reading of the evidence suggests that Hershewe simply made a bad business deal. Given that each theory is equally plausible, Hershewe has not met his burden to prove a substantial likelihood of success on the

merits.  The court denies the motion for a preliminary injunction.

### B.   Attachment and Seizure

In the alternative to a preliminary injunction, Hershewe moves for prejudgment attachment of $ 1.5 million and seizure of furniture bought with VLO funds under Federal Rule of Civil Procedure 64.

When addressing a motion for a writ of attachment or seizure, Federal Rule of Civil Procedure 64 directs courts to look to state substantive and procedural law. Both attachment and seizure are governed by Alabama Rule of Civil Procedure 64. <u>Universal Safety Response, Inc. v. Gov't Technical Serv., LLC</u>, 767 F. Supp. 2d 1252, 1253 (M.D. Ala. 2011) (Thompson, J.).  This rule requires an affidavit containing a description of the property, the plaintiff's title or right to the property, how the defendant has unlawfully detained the property, and the risk that the property will be

concealed, transferred, or damaged.  Ala. R. Civ. Proc. 64.

Where the court has already had a hearing on the issue, as in this case, the plaintiff also has the burden of showing "good cause."  Id.  "Implicit in good cause for prejudgment seizure would be some showing of risk of injury or loss of the collateral without prejudgment" attachment or seizure.  J.H. Wright & Assoc., Inc. v. Engerson, 2000 WL 1848135, at *3 (S.D. Ala. 2000) (Vollmer, J.) (internal quotation marks omitted).  Put differently, to show good cause, a plaintiff can claim an injury, such as the inability to conduct business without the assets taken by the defendants, or can argue that the defendants will spend, conceal, transfer, or dispose of all of the

12

assets--that is, make collecting on a judgment difficult or impossible--before the end of the case.[4]

### i. Attachment

The defendants argue that Hershewe did not properly allege a title or right to the money he seeks to attach, as is required under Alabama Rule of Civil

---

4. A plaintiff moving for an attachment must meet additional statutory requirements. Universal Safety, 767 F. Supp. 2d at 1253 (M.D. Ala. 2011) (Thompson, J.) (quoting Ex Parte Boykin, 568 So. 2d 1243, 1244 (Ala. Civ. App. 1990)). Specifically, a plaintiff must swear to the amount he is due, certifying that he meets one of the categories in Alabama law where an attachment may be used, and that the purpose of the suit is not "vexing or harassing the defendant." 1975 Ala. Code § 6-6-44. Because "Rule 64 provisions were promulgated to assure that the constitutional guarantees of due process are not violated[,] . . . these rules are to be strictly complied with." Ex Parte Boykin, 568 So.2d at 1244; see also Universal Safety, 767 F. Supp. 2d at 1254 (dismissing attachment claim where the defendant did not fulfill the statutory oath requirements). Although the defendants originally argued that Hershewe did not include the oath that he was not vexing or harassing the defendants, he has rectified this with a supplemental affidavit (doc. no. 85-1). The court finds that Hershewe meets the statutory requirements.

13

Procedure 34.  They cite Norman v. Occupational Safety Ass'n of Alabama Workmen's Comp. Fund, 811 So. 2d 492 (Ala. 2001), for the proposition that a court cannot order an attachment where there is no evidence an ownership interest ever existed.

Norman, however, is distinguishable from this case. In Norman, an investment fund hired a separate company to manage the fund and named the president of that company as the administrator of the fund.  Id. at 493. The administrator from this separate management company then advised the fund to transfer some of its workers-compensation insurance contracts to a third business, which he and his company happened to merge with less than a month later.  Id. at 493-94.  The investment fund then moved to seize[5] the proceeds of the merger,

---

    5.   The plaintiff in Norman moved for seizure rather than an attachment.  Because the requirements are the same under Alabama Rule of Civil Procedure 64 for both attachment and seizure, the analysis in Norman (continued...)

even though the fund did not have legal title or stock in the management company or the business with which the management company merged. Despite the potential breach of fiduciary duty on the part of the administrator, the court rejected the Rule 64 motion because the fund never had any legal interest in the stock of either the management company or the third business with which the management company merged. Id. at 502; see also Ala. R. Civ. P. 64(b)(1)(B).

Unlike Norman, Hershewe has a clear claim of right to the money that he invested in VLO. He originally owned the money and then claims that he was defrauded into transferring it to K. Givens and his sons. In contrast with the investment fund that was claiming control over an asset in which it never had any interest (the stocks of two companies of which it had

---

would be applicable in an analogous case regarding attachment.

15

not bought stock in), Hershewe is asserting a right to money that was his and--he claims--was wrongfully taken from him.[6]

The court also finds that Hershewe has shown good cause to believe the defendants will dispose of the money in Eagle Investments' bank account.  K. Givens transferred $ 1 million to Eagle Investments the day Hershewe transferred money to VLO, and $ 930,000 of that was spent within several days.  Another approximately $ 65,000 has since been used.  Given this pattern, Hershewe has alleged good cause that the money in the Eagle Investments bank account will be spent.

Because Hershewe meets the statutory and procedural requirements under Alabama law, the motion for attachment of Eagle Investments' bank account is

---

6. The defendants also argue that the money in the bank account is not capable of identification.  This standard, however, is applicable in the context of a seizure of property rather than for attachment.  Cf. Universal Safety, 767 F. Supp. 2d at 1254.

16

granted, provided that Eagle can petition the court to use the money for ordinary business expenses. However, the court refuses to freeze general assets of the defendants without any additional specificity as to Hershewe's claim of right to these assets. Not only would this violate Alabama Rule 64, but also, as a practical matter, the court cannot freeze assets without knowing which specific bank accounts or money Hershewe believes should be frozen.

### ii. Seizure

Hershewe next moves for prejudgment seizure of office supplies, furniture, and other property identified in his pleadings (doc. no. 138-3).[7]

---

7. Hershewe originally requested seizure of both the bank account as well as the furniture, but seems to have abandoned that argument in his supplemental pleadings on the issue. <u>See</u> Doc. No. 85-1 at 5 (requesting seizure of furniture, but only mentioning attachment of money); doc. no. 138-3 (identifying offense expenses as the object of seizure).

The court denies the motion for lack of good cause. In contrast to the demonstrated risk that the defendants would spend the money in Eagle Investments' bank account, there is no comparable imminent risk that the defendants are going to sell or dispose of the furniture identified in Hershewe's exhibits. As such, Hershewe has failed to show good cause as required under Alabama Rule of Civil Procedure 64. To the extent that the furniture is evidence of fraud, the defendants already have been cautioned by the court not to destroy or conceal it.

\*\*\*

Accordingly, it is ORDERED that:

(1) Plaintiff Edward Hershewe's motion for a preliminary injunction (doc. no. 17) is denied.

(2) Plaintiff Hershewe's motion for attachment of Eagle Investments' bank account--Midsouth account number 100088686--(doc. no. 17) is granted;

    **(3) Plaintiff Hershewe's motion for seizure of assets (doc. no. 17) is denied.**

    **DONE, this the 29th day of September, 2015.**

                                  /s/ Myron H. Thompson
                              **UNITED STATES DISTRICT JUDGE**